**Case No. 16-3960**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

DRFP L.L.C., dba Skye Ventures,
Plaintiff-Appellant,

v.

The República Bolivariana de Venezuela, *et al.*,
Defendants-Appellees.

_____

On Appeal from a Judgment of the
United States District Court for the Southern District of Ohio

_____

### APPELLEES' MOTION FOR ATTORNEYS' FEES

_____

Andrew Z. Schwartz
Matthew C. Baltay
Thomas R. Ayres, II
Richard G. Baldwin
Madeleine K. Rodriguez
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, MA 02210
Telephone: (617) 832-1000
Facsimile: (617) 832-7000
aschwartz@foleyhoag.com
mbaltay@foleyhoag.com
tayres@foleyhoag.com
rbaldwin@foleyhoag.com
mrodriguez@foleyhoag.com

Albert J. Lucas
CALFEE, HALTER &
  GRISWOLD, LLP
1200 Huntington Center
41 South High Street
Columbus, OH 43215-4243
Telephone: (614) 621-7002
Facsimile: (614) 621-0010
alucas@calfee.com

*Counsel for Defendants-Appellees*

## I.    **INTRODUCTION**

Appellees, the República Bolivariana de Venezuela and the Venezuelan Ministry of Finance (together, "Venezuela"), hereby seek an award of attorneys' fees against appellant DRFP L.L.C., dba Skye Ventures ("Skye"), and its counsel, pursuant to Federal Rule of Appellate Procedure 38, 28 U.S.C. §§ 1912 and 1927, and the majority and concurring opinions issued by this Court on August 24, 2017 (Document 49-2).  In support of this motion, Venezuela relies on the accompanying Declaration of Andrew Z. Schwartz, Esq., filed herewith as Exhibit A, which documents fees Venezuela has incurred in defeating Skye's appeal.

In this outrageous litigation, which has spanned 13 years, Skye sought to consummate a fraud of epic proportions in the United States Courts.  As this Court's recent majority opinion aptly observed, the case "stemmed from Skye's plan to invest with a known criminal (who had already been convicted for trading in false [Bandagro] notes) by buying counterfeited notes at less than two percent of their face value in a calculated effort to pull a 'gotcha' against a foreign sovereign."  Document 49-2 at 19.  As the concurring opinion elaborated, "Skye chose to buy (for pennies on the dollar) notes that were obviously fraudulent, and then for twelve years took a flier on enforcing them in federal court.  The consequences for the defendants and the court system alike have included a 23-day

bench trial and two notably burdensome appeals, the last of which was utterly without merit." *Id.* at 20.

As the district court found, Skye discovered "the plethora of evidence indicating that the Notes were invalid" prior to obtaining them for a pittance and immediately commencing this litigation, with the tainted seller retaining a substantial interest in the notes. *See* Op., R. 838, PAGEID 43800; Document 49-2 at 19; App'x 1600 at § 2.1. If the falsity of the notes was not obvious enough before Skye obtained them from a career criminal, it became clearer still during the discovery process, *see* Venez. Op. Statement, R. 687, PAGEID 30618–29, and overwhelmingly so at the lengthy trial, following which the district court found the notes to be fraudulent by "clear and convincing evidence." R. 838, PAGEID 43761.

Yet Skye pursued this appeal, without challenging the district court's findings that (a) the notes were fake and (b) Skye was aware of much of the evidence of the notes' falsity before obtaining them. Instead, Skye took the preposterous position that the notes, with $100 million in face value (on which Skye also sought a massive amount of interest), were enforceable against Venezuela despite being fake.

In its "calculated effort to pull a 'gotcha' against a foreign sovereign," Skye did more than "tak[e] a flier . . . in federal court." In addition, Skye resorted to

extra-judicial measures in an attempt to pressure Venezuela into a settlement.

Skye hired a public relations guru, known as the "Wizard of Spin," whom Skye

granted an interest in the fake notes in exchange for his services.  DEF-608, filed

herewith as Exhibit B.  Skye's strategy was to weaponize the litigation to interfere

with or increase the cost of Venezuela's issuance of legitimate sovereign debt.

Soon after obtaining the notes from the known criminal and filing suit in Ohio,

Skye's principal David Richards explained the public relations ploy as follows:

> If necessary, the most effective way to force a reasonable settlement
> could be to bring Venezuela's refusal to pay to light in a way that
> would be very costly.  Since this country . . . regularly accesses the
> US and European capital markets, investors who hear and have
> concerns that Venezuela is not paying valid obligations would be
> hesitant to purchase their debt . . . .

*Id.*

Skye's counsel played a role in Skye's public relations strategy as it evolved.

In October 2014, this Ohio lawsuit was somehow brought to the attention of the

*New York Post*.  In an article headlined "**Skye Ventures plans lien against**

**embattled Venezuela**," the *Post* reported that Skye "is moving to put a lien on

Citgo Petrol, the US subsidiary of Venezuela's state-owned oil company."  Richard

Morgan, *Skye Ventures plans lien against embattled Venezuela*, N.Y. Post, Oct. 20,

2014, http://nypost.com/2014/10/20/skye-ventures-plans-lien-against-embattled-

venezuela/.  The article quoted Skye's lead attorney as saying, "We truly believe

Citgo's assets will be subject to attachment."  Despite this posturing, however, no

such attachment was ever sought in this case (and would have had no chance of being granted). The *New York Post* article went on to state, without indicating its source, that "Skye's bonds have . . . accrued enough interest to be worth $1.5 billion," and put the cost of paying all the bonds of the same illicit origins at *$15 billion*. The article then again quoted Skye's lead counsel as saying:

> If we prevail at trial, other owners of the bonds can take notice of our judicial ruling and pile on . . . . But if Venezuela settles before going to trial, the settlement will likely be kept confidential and there will be no finding by a US court that the bonds are legitimate.

In addition to engaging in these extracurricular activities, Skye hid the ball in the litigation. Specifically, for the first ten years of the case, Skye concealed the known criminal's residual interest in the notes Skye was seeking to enforce. *See* R. 825, PAGEID 41603–41606. Only the threat of a motion to compel prompted Skye to finally produce an unredacted version of what it claimed to be the operative agreement by which it obtained the notes, App'x 1594–1602, thereby disclosing for the first time that the "seller" retained an interest in the outcome of this litigation potentially worth tens of millions of dollars. And only after the district court ordered Skye to produce all agreements between Skye and the seller, R.403, was the corrupt architecture of this lawsuit fully exposed.

That is not the only relevant information Skye failed to disclose. At issue in the first appeal in this case was whether, under the commercial activity exception to the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.*, Venezuela's

alleged commercial activity caused "a direct effect in the United States." Skye's theory was that because the (fake) notes failed to specify a place of enforcement, they could be enforced anywhere, including the United States, creating a "direct effect" here. To support the premise of this theory—that the notes could be enforced anywhere—Skye submitted an "expert affidavit" of one Gary Post, dated June 24, 2008, Post. Aff., R. 137-3, upon which both the district court and this Court on the first appeal relied. *DRFP L.L.C. dba Skye Ventures v. República Bolivariana de Venez.*, 622 F.3d 513, 516 (6th Cir. 2010); R. 144, PAGEID 2512–2513 (district court reliance on Post affidavit); Case 09-3424, Doc. 62 at 35–36 (Skye representing in its appellate brief, "Through the testimony of Gary Post, Skye proved that ICC Publications also permit Skye to designate the U.S. as a place of performance for the notes. . . . The District Court accepted Mr. Post as 'an expert in financial matters and the ICC's regulations in its Rules on Collection'"). As it turns out, Post was one of Richards' partners and Post and his wife were both investors in Richards' deals. R. 791, PageID 37487:4–10. Immediately prior to this litigation, Post was involved with Skye's "initial diligence" and with Skye's efforts to market purported Bandagro notes for Gruppo Triad. R. 792, PAGEID 37776:7–12; *see also id.*, PAGEID 37889:23–37890:9; R. 793, PAGEID 38027:20–23. In November 2004, Post and Richards prepared materials and attended a conference to try to sell another of these fake $50 million notes to

investors.  R. 792, PAGEID 37797:10–37798:14; R. 793, PAGEID 37957:14–

37958:1; *see also* R. 792*,* PAGEID 37903:20–37905:2; R. 793, PAGEID 37942:3–

8.  In March 2005, Richard was working with Post and others on coming up with

answers to journalists' questions about the notes and the litigation.  R. 792,

PAGEID 37800:10–37802:13.  These connections were not disclosed in Post's

"expert affidavit."  R. 137-3.

These examples reinforce this Court's assessment of this case in its recent

decision.  The case was rotten to its core from the outset and throughout its long

history.

## II.    <u>ARGUMENT</u>

This Court has the power to award appellate attorneys' fees against Skye and

its attorneys pursuant to the "overlapping standards" of Federal Rule of Appellate

Procedure 38, 28 U.S.C. § 1912 and 28 U.S.C. § 1927.  *Hogan v. Jacobson*, 823

F.3d 872, 886 (6th Cir. 2016).  Rule 38 provides for sanctions "[i]f a court of

appeals determines that an appeal is frivolous."   Fed. R. App. P. 38.  Sanctions for

a frivolous appeal are appropriate when the appeal had "no reasonable expectation

of altering the district court's judgment" and is prosecuted "for purposes of delay

or harassment or out of sheer obstinacy."  *Allinder v. Inter-City Prods. Corp.*

*(USA)*, 152 F.3d 544, 552 (6th Cir. 1998).  The court need not make a finding of

bad faith or intentional misconduct to impose sanctions.  *Wilton Corp. v. Ashland*

*Castings Corp.*, 188 F.3d 670, 677 (6th Cir. 1999). It is sufficient that the appeal is "wholly without merit." *See id.* Sanctions awarded under Rule 38 include the attorneys' fees incurred by a party defending against a frivolous appeal. *E.g.*, *Miller v. Toyota Motor Corp.*, 554 F.3d 653, 655 (6th Cir. 2009) (awarding attorney's fees as sanctions under Rule 38). Sanctions are also appropriate under 28 U.S.C. § 1912, which "is similar in application to Rule 38." *Hogan*, 823 F.3d at 886 (citation and internal quotations omitted). 28 U.S.C. § 1912 permits an appellate court to award the prevailing party "just damages for his delay, and single or double costs." Finally, 28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously" may be required to pay "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. 1927. Section 1927 allows for sanctions when the attorney knows or should know the claim pursued on appeal is frivolous. *Hogan*, 823 F.3d at 886.

Sanctions under these rules may be imposed against the party itself, counsel, or both. *See, e.g.*, *B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 271 (6th Cir. 2008) (imposing sanctions against counsel and client jointly). Where the appellant may be judgment-proof, an award against its counsel furthers the policy underlying the imposition of sanctions. *See In re Ginther*, 791 F.2d 1151, 1156 (5th Cir. 1986) (awarding fees against counsel "to further the policy underlying the

imposition of sanctions, and to aid the appellees in collecting their award" where the party's "ostensible insolvency may present a problem in collecting an award"); *Good Hope Refineries, Inc. v. Brashear*, 588 F.2d 846, 848 (1st Cir. 1978) (same); *see also Miller*, 554 F.3d at 654 (the purpose of Rule 38 is to both penalize the appellant and compensate the injured appellee).

As far as counsel for Venezuela is aware, Skye is a single-purpose entity whose only assets are the two fake notes at issue in this case, plus a third fake note, number "9/12" in the same series. R. 792, PAGEID 37881:10–13; 37885:9– 37886:4; R. 791, PAGEID 37468:4–24; R. 258-2, PAGEID 4935–36 ¶¶ 5, 11–13. Skye has kept that third note, also supposedly with a face value of $50 million, in its back pocket for most of the life of this case. R. 793, PAGEID 38002:17– 38004:4.[1]

Both the majority and the concurring opinions determined in no uncertain terms that Skye's appeal was frivolous and expressly invited this motion. As the majority opinion found, "Skye has advanced arguments untethered to valid analysis of either Ohio or Venezuela law." Document 49-2 at 19. As the

---

[1] Venezuela leaves for another day, if necessary, the question whether Skye's corporate veil should be pierced to collect any fee award this Court may issue. *See* R. 710, PAGEID 34141 at 99:8–11 ("You know, David Richards, Skye Ventures, most people look at my entities as the same thing.").

concurring opinion added, Skye's appeal was "utterly without merit." *Id.* at 20.

Among other affronts, Skye's opening brief on this appeal failed to acknowledge,

much less reckon with, this Court's holdings on the prior appeal that foreclosed

Skye's arguments regarding the effect of the Venezuelan Supreme Court's 2007

opinion. *See* Document 49-2 at 15–16. Based on this Court's rulings on Skye's

appeal, and Skye's perpetuation of this long-running litigation after the trial

conclusively established that its notes are fake, an award of appellate attorneys'

fees against both Skye and its counsel is warranted.

As set forth in the accompanying declaration, Venezuela has incurred

attorneys' fees in excess of $750,000 in connection with Skye's appeal. These fees

reflect the actual and necessary costs of representing Venezuela in this unique

matter. Venezuela recognizes that this is a large amount, which may at first blush

seem disproportionate given the ease with which the Court disposed of Skye's

arguments. It bears emphasis, however, that Skye was seeking to enforce $100

million in face amount of purported notes, plus years of allegedly accrued interest

which, if awarded, could have greatly increased the liability. (As noted above, the

*New York Post*, which spoke with Skye's counsel in 2014, somehow came up with

the fanciful notion that "Skye's bonds have . . . accrued enough interest to be worth

$1.5 billion.") While Skye may have had no realistic chance of prevailing on

appeal, Venezuela could not take the outcome for granted in light of the threatened exposure to its public fisc.

Moreover, there were dozens of other purported Bandagro notes of the same ilk as Skye's in circulation. Skye's litigation, if successful, could have paved the way for others to emerge from the shadows to try to enforce their fake notes, too. That risk was not just theoretical. Four of those other fake notes, in the aggregate face amount of another $100 million, were held by Venospa, LLC, an entity associated with Carlos Delgado Morean, the Gruppo Triad collaborator who was embedded in the Ministry of Finance team investigating Gruppo Triad's notes. *See* Document 39 at 60. Venospa unsuccessfully tried to intervene to enforce its fake notes in this litigation. *See* R. 158; R. 198. Venospa's lawyer—who represented Delgado in connection with the formation of Venospa during the pendency of this litigation—attended much of the 23-day trial as an observer. R. 802, PAGEID 39454:24–39455:1, 39467:25–29468:23, 39470:8–13. Venospa's lawyer was also called as a witness. R. 802, PAGEID 39454–99. He testified that Delgado had come to him in April 2009 "for an evaluation of the notes he held and the likelihood of his bringing an action in the United States." R. 802, PAGEID 39475:4–8. He confirmed that Venospa was holding four purported notes with an aggregate face value of $100 million that had previously been held by Gruppo Triad and testified that he attended the trial because he was "interested in the

outcome of the case on behalf of [Venospa] who is not a party but may file litigation elsewhere or may later file here." R.802, PAGEID 39455:2–39456:3.

In addition, Skye's appeal was inherently burdensome and time consuming for Venezuela, and presumably this Court as well, notwithstanding the weakness of Skye's case. There was a vast record on appeal, with the facts spanning decades and continents. The record for this appeal included more than 800 district court docket entries, the prior appellate record, 23 days of trial transcripts, and more than 850 trial exhibits, many in Spanish or Italian. Defending against this appeal was a necessarily expensive endeavor.

Venezuela recognizes that the Court may not be disposed to award it every dollar of fees it incurred. Venezuela will be content with whatever amount the Court, in its discretion, believes is an appropriate sanction against Skye and its counsel in these circumstances.[2]

---

[2] In this motion, Venezuela is seeking an award of appellate attorneys' fees only, and not seeking to recover appellate costs or other out-of-pocket expenses incurred in connection with the appeal. The costs compensable under Fed. R. App. P. 39 and corresponding Sixth Circuit rules and procedures, even if doubled under Fed. R. App. P. 38, are negligible, given that Venezuela filed its brief and appendix electronically. And the out-of-pocket expenses Venezuela incurred on the appeal are *de minimis* in relation to the amount of fees Venezuela incurred. Venezuela has pending in the district court a bill of costs in the amount of approximately $226,000, which includes virtually all of the court reporter's transcripts necessary for this appeal. R. 841, R. 844. Skye has opposed that bill of costs. R. 843.

### III.    <u>CONCLUSION</u>

For the reasons set forth above, the Court should grant this motion and issue an award of appellate attorneys' fees against Skye and its counsel, jointly and severally.  This litigation should never have been brought, and Skye's appeal should never have been filed.  The litigation in general, and Skye's appeal in particular, have imposed substantial financial burdens on a foreign sovereign government.   An award of appellate fees would mitigate some of the damage this travesty of a case has inflicted.

Respectfully submitted,
REPÚBLICA BOLIVARIANA DE
VENEZUELA AND VENEZUELAN
MINISTRY OF FINANCE

By their attorneys,

*/s/ Richard G. Baldwin*
Andrew Z. Schwartz
Matthew C. Baltay
Thomas R. Ayres, II
Richard G. Baldwin
Madeleine K. Rodriguez
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, MA 02210
Telephone: (617) 832-1000
Facsimile: (617) 832-7000
aschwartz@foleyhoag.com
mbaltay@foleyhoag.com
tayres@foleyhoag.com
rbaldwin@foleyhoag.com
mrodriguez@foleyhoag.com

Albert J. Lucas
CALFEE, HALTER &
    GRISWOLD, LLP
1200 Huntington Center
41 South High Street
Columbus, OH 43215-4243
Telephone: (614) 621-7002
Facsimile: (614) 621-0010
alucas@calfee.com

September 7, 2017

## RULE 32(g) CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B). This motion contains 2,863 words, as determined by word-processing software.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.

*/s/ Richard G. Baldwin*
Richard G. Baldwin

September 7, 2017

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a copy of the Appellees'

Motion for Attorneys' Fees including the accompanying exhibits were filed

electronically and served electronically on the following counsel of record this 7th

day of September, 2017:

Charles H. Cooper, Jr.                     John C. Camillus
Rex H. Elliott                              The Law Offices of
C. Benjamin Cooper                              John C. Camillus, LLC
Cooper & Elliott, LLC                       P.O. Box 14140
2175 Riverside Drive                        Columbus, Ohio 43214
Columbus, Ohio 43221

                                            _/s/ Richard G. Baldwin_____
                                            Richard G. Baldwin